# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 10, 2011

No. 10-40449

Lyle W. Cayce
Clerk

GUY COVINGTON; RUSSELL COVINGTON,

Plaintiffs - Appellants

v.

ABAN OFFSHORE LIMITED, formerly known as Aban Loyd Chiles Offshore, Limited,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas

Before JONES, Chief Judge, and DENNIS and CLEMENT, Circuit Judges.

DENNIS, Circuit Judge:

Guy Covington and Russell Covington appeal challenging the district court's conclusion that they, as agents of Beacon Maritime, Inc. ("Beacon"), are bound by Beacon's agreement to arbitrate disputes with Aban Offshore Limited ("Aban"). We conclude that under settled principles of agency and contract law the Covingtons are not personally bound by Beacon's agreement with Aban, and therefore we REVERSE the district court's order compelling arbitration and REMAND for further proceedings consistent with this opinion.

No. 10-40449

## I.

The facts are straightforward and undisputed. At all relevant times, the plaintiffs-appellants were officers and employees of Beacon. Guy was Beacon's Vice President of Sales and Marketing and Russell was its President and a Director. On September 13, 2005, Guy, as Vice President and on behalf of Beacon, executed a contract with Aban. Guy did not sign the contract in his personal capacity; Russell did not sign it at all. The contract was for Beacon to perform services for Aban, refurbishing its oil rig.

The contract contained a dispute resolution provision, Article XX, which stated in relevant part:

> All disputes arising hereunder or related to the work to be performed on the Vessel by Contractor shall first be attempted to be resolved by informal discussions between the parties. If the parties mutually agree in writing to terminate those informal discussions, or upon the written notice by one party to the other party terminating those informal discussions, the parties agree to submit the dispute to non-binding mediation. If non-binding mediation fails to resolve the dispute, the parties agree to submit the dispute to binding arbitration to be conducted by a panel of three (3) arbitrators.

A dispute arose regarding Beacon's performance, and Aban eventually initiated arbitration proceedings against Beacon and also against the Covingtons as individuals. The Covingtons then filed a petition in Texas state court, seeking a declaratory judgment that they, in their personal capacities, were not required to arbitrate against Aban. Invoking the federal courts' diversity jurisdiction, Aban removed the case to the United States District Court for the Eastern District of Texas and filed a motion to compel the Covingtons to arbitrate the dispute.

No. 10-40449

The district court granted Aban's motion to compel.  It reasoned, "The parties do not dispute that a valid arbitration agreement exists between Aban and Beacon.  Rather, they contest whether the Covingtons, as non-signatories [in their individual capacities], are bound by it.  Normally, courts apply . . . contract law" to determine who is bound by such an agreement.  *Covington v. Aban Offshore Ltd.*, No. 1:10-CV-5, slip op. at 4 (E.D. Tex. Mar. 15, 2010) (citations omitted).  However, the district court continued, it was unclear whether federal or Texas contract law controlled.  The district court determined that it did not need "to decide the choice-of-law issue because, in this case, federal and the applicable state law 'dovetail to provide the same outcome.'"  *Id.* at 5 (quoting *Graves v. BP Am., Inc.*, 568 F.3d 221, 223 (5th Cir. 2009)).  The district court concluded that the Covingtons were bound by the arbitration agreement because both "federal and Texas state courts have allowed non-signatory agents, employees, and representatives of a signatory principal to compel arbitration when the non-signatories' alleged wrongful acts relate to their behavior as agents and fall within the scope of the arbitration agreement."  *Id.*  The district court rejected the Covingtons' argument that such cases were distinguishable because "the courts compelled arbitration *in favor* of non-signatories who sought the benefit of arbitration."  *Id.* at 6.  It reasoned that "[f]ederal courts . . . have applied the same reasoning to compel arbitration *again*st non-signatories who, like the Covingtons, resisted arbitration."  *Id.*[1]  The district court concluded that there was no reason to believe "that Texas state courts would deviate from federal

---

[1] In support of this statement, the district court cited *Lee v. Chica*, 983 F.2d 883 (8th Cir. 1993); *Doran v. Bondy*, No. 5:04-CV-99, 2005 WL 1907252 (W.D. Mich. Feb. 18, 2005); and *Creative Telecommunications, Inc. v. Breeden*, 120 F. Supp. 2d 1225 (D. Haw. 1999).

No. 10-40449

law on this point," especially since "Texas state courts have noted the importance of maintaining uniformity between federal and state arbitration law." *Id.* Based on this reasoning, the district court held that the Covingtons, in their personal capacities, were bound by the arbitration provision of the contract between Aban and Beacon.

The Covingtons filed a motion for a new trial, which the district court construed as a motion for reconsideration and denied for essentially the reasons given in its original opinion. This appeal followed.

## II.

"We review a district court's grant of a motion to compel arbitration *de novo . . . .*" *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 708 (5th Cir. 2002). A court may compel arbitration only if it concludes that the parties "ma[de] . . . the agreement for arbitration." 9 U.S.C. § 4. "If the [court] find[s] that [the parties made] no agreement in writing for arbitration . . . , the proceeding shall be dismissed." *Id.*

As the district court recognized, we have held that "[o]rdinary principles of contract and agency law may be called upon to bind a nonsignatory to an [arbitration] agreement whose terms have not clearly done so." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003). Moreover, we agree with the district court that we need not decide in this case whether those principles should be drawn from Texas law or federal law,[2] because both bodies of law lead us to the same conclusion. *See Railroad*

---

[2] The contract states that it is to be governed by Texas law. The Supreme Court's opinion in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), supports the application of state law: "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles

4

No. 10-40449

*Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005) ("Where there are no differences between the relevant substantive laws . . . , there is no conflict, and a court need not undertake a choice of law analysis.").

Contrary to the district court, however, we conclude that under established principles of agency and contract law, the fact that Beacon entered into the contract with Aban, thereby agreeing to the arbitration clause, did not cause Beacon's agents, the Covingtons, to be personally bound by that agreement, even though Guy Covington executed the contract on behalf of Beacon. The Restatement (Third) of Agency states: "When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal, (1) the principal and the third party are parties to the contract; and (2) the agent is not a party to the contract unless the agent and third party agree otherwise." Restatement (Third) of Agency § 6.01 (2006). The Restatement (Second) of Agency says substantively the same thing: "Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract." Restatement (Second) of Agency § 320 (1958). Aban has not

---

that govern the formation of contracts." *Id.* at 944. However, our court has stated that "the federal substantive law of arbitrability" applies to the question of "to what extent a non-signatory is bound by an arbitration provision contained in a contract she is suing under." *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 267 n.6 (5th Cir. 2004). (The question in *Washington Mutual* was similar to, but distinct from, the question we are deciding here, which is whether the Covingtons, who are non-signatories, are bound by arbitration provisions contained in the contract between Aban and Beacon, under which they are being sued.) The Texas Supreme Court has stated that, given the uncertainty about whether federal or state law governs the question of whether a nonsignatory is bound by an arbitration agreement, "we have determined to apply state substantive law and endeavor to keep it consistent with federal law." *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (citing *In re Weekley Homes*, 180 S.W.3d 127, 130-31 (Tex. 2005)).

alleged the existence of an agreement that empowered Beacon to contract on behalf of the Covingtons as individuals.  Therefore, the Covingtons are not bound by the terms of Beacon's arbitration agreement with Aban.

Further supporting such a conclusion, a recent Texas appellate decision, *Roe v. Ladymon*, 318 S.W.3d 502 (Tex. App.–Dallas 2010, no pet.), applied the above-stated principles to a set of facts very similar to those of the present case and reached the same result we reach.  There, Roe, a homeowner, entered into a contract with Metro LLP, a contractor.  *Id.* at 507.  Ladymon signed the contract in his capacity as a partner of Metro.  *Id.*  When Roe was unsatisfied with Metro's work, she pursued arbitration against both Metro and Ladymon.  *Id.* at 508.  The arbitrator awarded damages to Roe and held that Metro and Ladymon were jointly and severally liable for those damages.  *Id.* at 509.  However, when Roe filed suit to confirm the arbitration award, the state trial court "held that the arbitrator exceeded his authority in rendering an award against Ladymon individually."  *Id.*  The court of appeals affirmed.  The court explained that "by signing the contract as an agent for a disclosed principal, Ladymon did not become personally bound by the terms of that contract, including the arbitration clause."  *Id.* at 521.

The *Roe* court distinguished its case from a different class of cases — for example *In re Vesta Insurance Group, Inc.*, 192 S.W.3d 759 (Tex. 2006) — in which courts have held that plaintiffs who sign arbitration agreements can be compelled to arbitrate their disputes with nonsignatory defendants.  It stated that in those cases, "a signatory to a contract containing an arbitration clause filed . . . suit against non-signatory officers and agents of the other party to the contract," thereby attempting to avoid arbitration.  *Roe*, 318

No. 10-40449

S.W.3d at 520 (citing *Vesta*, 192 S.W.3d at 762-63). "The signatory plaintiff was resisting arbitration [but] the non-signatory defendants sought to hold the signatory plaintiff to abide by his agreement to arbitrate." *Id.* In such circumstances, "a signatory plaintiff cannot avoid its agreement to arbitrate disputes simply by bringing . . . claims against the [nonsignatory] officers, agents, or affiliates of the other signatory to the contract." *Id.* (citing *Vesta*, 192 S.W.3d at 762-63). "[E]stoppel principles" indicate that the courts should hold the plaintiff to his agreement to arbitrate. *Id.* By contrast, the *Roe* court elaborated, under the facts in *Roe* there was no "basis to 'estop' [the defendant] from refusing to arbitrate because he never agreed to arbitrate." *Id.* at 520-21. "[T]he party resisting arbitration did not sign the agreement to arbitrate [in his individual capacity]." *Id.* at 520. The present case is like *Roe* and unlike *Vesta* because here the parties resisting arbitration, the Covingtons, never personally agreed to arbitrate. Thus, under *Roe*, the Covingtons are not bound by the arbitration agreement.[3]

Federal courts addressing similar fact patterns have followed essentially the same reasoning, and have reached analogous results. In *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435 (3d Cir. 1999), the Third Circuit partially reversed a district court's order compelling arbitration; the appellate court held that only the defendant corporation and not its individual directors and officers were bound by an arbitration agreement, because the directors

---

[3] Aban cites *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185 (Tex. 2007), as supporting its position that the Covingtons should be compelled to arbitrate. However, the facts of *In re Merrill Lynch* are analogous to *Vesta*, not *Roe*. There, the defendants seeking to compel arbitration were non-signatories and the plaintiff resisting arbitration was a signatory to the agreement. *Id.* at 188.

No. 10-40449

and officers had not personally agreed to arbitrate. *Id.* at 446. The Third Circuit reasoned, "Arbitration is strictly a matter of contract. If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Id.* at 444. Likewise, in *Merrill Lynch Investment Managers v. Optibase, Ltd.*, 337 F.3d 125 (2d Cir. 2003), the Second Circuit upheld a preliminary injunction preventing a plaintiff from pursuing arbitration proceedings against a defendant which was not a party to the arbitration agreement. *Id.* at 132. The defendant resisting arbitration in *Merrill Lynch* was a corporation which was affiliated with another corporation that had entered into the arbitration agreement.

The *Bel-Ray* and *Merrill Lynch* courts both distinguished a prior case, *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993), in which plaintiffs who had signed an arbitration agreement had been compelled to arbitrate claims against two nonsignatory defendants (an individual and a corporation) that were agents of the other party to the agreement. The Second Circuit succinctly explained that *Pritzker* was distinguishable because "it matters whether the party resisting arbitration is a signatory or not." *Merrill Lynch*, 337 F.3d at 131; *see also Bel-Ray*, 181 F.3d at 444-45.

The Supreme Court's decision in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), is also consistent with our conclusion. *First Options* involved a similar set of facts, although the Court's opinion focused on a slightly different question — the threshold issue of whether the parties had "agree[d] to submit the arbitrability question itself to arbitration." *Id.* at 943. In that case, the plaintiff (First Options) had entered into an arbitration

No. 10-40449

agreement with a corporate defendant (MKI) and sought to compel MKI's owner and his wife (the Kaplans) to arbitrate, even though the Kaplans were not parties to the arbitration agreement. The arbitration panel ruled that it had the power to enter an award against the Kaplans despite their unwillingness to arbitrate. But "the Third Circuit agreed with the Kaplans that their dispute was not arbitrable," *id.* at 941, and the Supreme Court affirmed, *id.* at 949.

In summary, both the Texas and federal courts have recognized that in determining whether a party can be compelled to arbitrate, "it matters whether the party resisting arbitration is a signatory or not." *Merrill Lynch*, 337 F.3d at 131. In this case, the parties resisting arbitration — the Covingtons, in their individual capacities — are not signatories. Under ordinary principles of agency law, their positions as Vice-President and President of Beacon are insufficient to personally bind them to the arbitration agreement. Aban points to nothing that indicates that the Covingtons empowered Beacon to bind them individually. Therefore, we conclude that they are not parties to, or bound by, the arbitration agreement.

Aban argues that the three federal cases relied upon by the district court demonstrate that agency principles can be applied to "compel arbitration against unwilling nonsignatories, like the Covingtons." Appellee's Br. 11 (citing *Lee v. Chica*, 983 F.2d 883 (8th Cir. 1993); *Doran v. Bondy*, No. 5:04-CV-99, 2005 WL 1907252 (W.D. Mich. Feb. 18, 2008); *Creative Telecomms., Inc. v. Breeden*, 120 F. Supp. 2d 1225 (D. Haw. 1999)). In those cases, the courts held that unwilling nonsignatories were bound by arbitration agreements because they were agents of corporations that had

entered into those agreements.  However, we find the *Lee*, *Doran*, and *Creative Telecommunications* opinions unpersuasive because they relied largely on cases involving *signatories* resisting arbitration, and failed to recognize the importance of the distinction between signatories and nonsignatories in the context of those cases.  The district courts in *Doran* and *Creative Telecommunications* also relied on the Eighth Circuit's decision in *Lee*.  However, not only is *Lee* in conflict with the Second and Third Circuits' decisions in *Bel-Ray* and *Merrill Lynch*, but it also appears to have been impliedly overruled by subsequent caselaw.  *Lee* was decided prior to *First Options*, in which the Supreme Court affirmed the Third Circuit's holding that a non-signatory defendant, who was the owner of a corporation that had agreed to arbitrate, was not personally bound by the corporation's agreement.  More recently, in *Nitro Distributing, Inc. v. Alticor, Inc.*, 453 F.3d 995 (8th Cir. 2006), the Eighth Circuit has followed the same distinction on which the *Bel-Ray* and *Merrill Lynch* courts relied, explaining that "situations where a *nonsignatory* attempts to bind a *signatory* to an arbitration agreement" are crucially different from those where "the signatory . . . is attempting to bind the nonsignatory . . . to the arbitration agreement."  *Id.* at 999.  The *Nitro* court accordingly held that the nonsignatory plaintiffs in that case were not bound by an arbitration agreement they had not signed.  *Id.*  Thus, *Nitro*, and not *Lee*, appears to represent the current state of the law in the Eighth Circuit, and it is in harmony with *Bel-Ray* and *Merrill Lynch* and with our decision in the present case.

Aban also claims that because the arbitration provision in the contract "provides that 'all disputes arising hereunder' shall be submitted to

No. 10-40449

arbitration," the provision was clearly intended to bind Beacon's agents. Appellee's Br. 14.  However, the arbitration provision also clearly and explicitly indicates that it is only applicable to "the parties."  As explained above, although Guy Covington signed the contract, he did so on behalf of Beacon, not in his personal capacity.  The Federal Arbitration Act "'does not require parties to arbitrate when they have not agreed to do so . . . .'"  *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 217 (5th Cir. 2003) (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002)).   Because no one has alleged that Beacon had the authority to bind the Covingtons individually and neither Covington signed the contract in his individual capacity, they cannot have been parties to the contract. Consequently, the Covingtons are not bound by the arbitration provision.

## III.

For the foregoing reasons, the judgment of the district court is REVERSED.  The case is REMANDED to the district court for further proceedings consistent with this opinion.