## United Industries Corporation v. Leveraged Marketing Corporation of America

208

*Albert G. Bixler* and *Keith E. Smith*, for plaintiff.
*Michael V. Phillips* and *Michael S. Pepperman*, for defendant.

MCINERNEY, *J.*, Dec. 10, 2014—

## I. BACKGROUND

On January 21, 2004, Leveraged Marketing Corporation of America ("LMCA") and Black Flag Brands, LLC ("Black Flag") entered into a written trademark representation agreement whereby Black Flag designated LMCA as its exclusive licensing representative for its "Black Flag" trademark and agreed to pay LMCA certain commissions upon licensing the trademark (the "2004 TRA"). The 2004 TRA contains an arbitration provision whereby "[a]ny dispute or controversy arising out of or relating to this [a]greement, or to the breach thereof, ...will be settled by arbitration before one arbitrator in Philadelphia, Pennsylvania, in accordance with the rules of the American Arbitration Association (AAA) then obtaining." (2004 TRA ¶ 11.02.) Black Flag and LMCA

are the only signatories to the 2004 TRA.

In 2010, LMCA brokered a written licensing agreement between Black Flag and Greenscapes Home and Garden Products, Inc. ("Greenscapes") whereby Black Flag licensed its trademark to Greenscapes so that Greenscapes could sell a "Black Flag" line of bug zappers (the "2010 Greenscapes License Agreement"). The 2010 Greenscapes License Agreement identifies LMCA as Black Flag's "sole agent/finder/broker in connection with this [a]greement" and provides that Black Flag as the licensor shall bear "[a]ny and all commissions, fees and/or other monies due LMCA in connection with this [a]greement...." (2010 Greenscapes License Agreement Art. 24.) The 2010 Greenscapes License Agreement does not contain an arbitration clause, does not mention the 2004 TRA, but does contain an integration clause stating, "[t]his agreement constitutes the entire [a]greement between the parties as to the [l]icensed [i]tems, and supersedes all prior agreements and understandings relating to this subject matter hereof." (2010 Greenscapes License Agreement Art. 29.) Black Flag and Greenscapes are the only signatories to the 2010 Greenscapes License Agreement.

In 2011, United Industries Corporation ("United Industries") entered into an asset purchase agreement whereby it purchased certain specified assets from Black Flag, Black Flag's parent, Homax Group, Inc., and other Homax Group, Inc. affiliated companies (the "2011 APA"). The assets purchased included the 2010 Greenscapes License Agreement. United Industries paid the Homax entities more than $43 million to purchase these assets.

The 2011 APA makes clear that United Industries only

purchased, and only assumed the rights and liabilities of the Homax entities with respect to, certain specified "Purchased Assets," which included certain contracts specifically listed in the 2011 APA as "Assigned Contracts." (*See* 2011 APA § 2.01-2.04.) The 2004 TRA is not listed as one of those "Assigned Contracts." Accordingly, under the terms of the 2011 APA, the 2004 TRA is an "Excluded Contract" that United Industries did not purchase and was not assigned. (2011 APA § 2.02.) As to all "Excluded Liabilities," including "Excluded Contracts," the 2011 APA states United Industries "shall not assume and shall not be responsible to pay, perform or discharge any [l]iabilities of [the Homax entities] or any of their [a] ffiliates of any kind or nature whatsoever." (2011 APA § 2.04.)

On or about April 1, 2014, United Industries received a copy of an American Arbitration Association ("AAA") Demand for Arbitration from LMCA. The demand for arbitration sought to have United Industries, Black Flag, and Homax BF Holdings Corp. participate in an arbitration hearing in Philadelphia, Pennsylvania based on allegations that United Industries, Black Flag, and/ or Homax BF Holdings Corp. owe LMCA commissions on the licensing royalties United Industries has received from Greenscapes subsequent to its purchase of the 2010 Greenscapes License Agreement in 2011 as part of the 2011 APA. The demand for arbitration also stated that LMCA was demanding arbitration pursuant to the 2004 TRA and attached a copy of the 2004 TRA.

In correspondence to LMCA and the AAA case administrator, United Industries objected to the jurisdiction and authority of the AAA and its arbitrators over United Industries, and to the arbitrability of any issues relating

to any claims LMCA may have against United Industries on the grounds that no arbitration agreement exists between LMCA and United Industries. In a May 13, 2014 email, the AAA case administrator advised that the AAA would proceed to administer the arbitration commenced by LMCA, including against United Industries, in the absence of an agreement by the parties or a court order staying this matter.

On June 9, 2014, United Industries filed a complaint and a motion against LMCA seeking to enjoin LMCA from continuing to pursue the pending AAA arbitration against it. In its motion, United Industries argued it "is not a party to or otherwise bound by the arbitration provision in the [2004] TRA" and "[a]bsent exceptional circumstances, non-signatories to a contract are not subject to an arbitration clause in that contract." (Pl.'s Mem. pp. 8-9.) United Industries stated "[c]ourts have recognized five contract theories on which a non-signatory may be bound to a contractual arbitration clause: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/ alter ego; and estoppel." (Pl.'s Mem. p. 10 (citation omitted).) United Industries argued LMCA cannot show any of these theories apply.

Regarding incorporation by reference, United Industries stated "[t]he only conceivable link between United Industries and LMCA is the 2010 Greenscapes License Agreement that United Industries did purchase and assume from Black Flag...." (Pl.'s Mem. p. 12.) United Industries then, however, proceeded to argue:

Although the [2010] Greenscapes License Agreement identifies LMCA as the agreement's broker, LMCA is not a party to that [a]greement. And even if LMCA could

claim any rights under the [2010] Greenscapes License Agreement, that agreement itself contains no arbitration provision and does not even mention the [2004] TRA, let alone purport to incorporate any provisions of the [2004] TRA. To the contrary, the [2010] Greenscapes License Agreement contains an integration clause that expressly refutes the incorporation of any other agreements.... Thus, there is no basis for finding the [2010] Greenscapes License Agreement somehow incorporates any part of the [2004] TRA, let alone the arbitration provision in the [2004] TRA.

(Pl.'s Mem. p. 12 (citations omitted).)

Regarding estoppel, United Industries cited a number of cases addressing the theory and argued that "[h]aving never exploited or even relied on the [2004] TRA to claim or receive any direct benefit under that contract, United Industries cannot be equitably bound to the [2004] TRA's arbitration clause." (Pl.'s Mem. p. 14 (emphasis removed).) To the contrary, United Industries stated that although it did obtain Black Flag's rights to the 2010 Greenscapes License Agreement, "it did not receive those rights directly from the 2004 TRA." (Pl.'s Mem. p.13.) Rather, United Industries argued it received those rights ", along with the other specified 'Purchased Assets' by paying more than $43 million to the Homax [e]ntities in a separate 2011 asset purchase transaction." (Pl.'s Mem. p. 13.)

On June 23, 2014, LMCA filed a response in opposition to United Industries' motion to enjoin arbitration. Therein, LMCA argued the 2004 TRA is incorporated by reference into the 2010 Greenscapes License Agreement because the later agreement "expressly references the obligation to pay

commissions to LMCA" by stating "[Black Flag's] sole agent/finder/broker in connection with this [a]greement is [LMCA].... Any and all commissions, fees and/or other monies due LMCA in connection with this [a]greement shall be borne by [Black Flag]."" (Def.'s Mem. pp. 5-6 (quoting 2010 Greenscapes License Agreement Art. 24).) LMCA also argued in terms of estoppel that United Industries "incorrectly claims that it did not receive any right to the [2010] Greenscapes License Agreement directly through the [2004 TRA] or any efforts of LMCA..." (Def.'s Mem. p. 6 (quotations omitted).) Rather, LMCA asserted the 2010 Greenscapes License Agreement references LMCA and its "effort, expended pursuant to the [2004 TRA], is the sole reason why [United Industries] has been paid hundreds of thousands of dollars in royalties by Greenscapes under the [2010] Greenscapes License Agreement." (Def.'s Mem. pp. 6-7 (emphasis removed).)

On June 26, 2014, United Industries filed a reply in further support of its motion to enjoin arbitration. Therein, United Industries stated:

As a whole, LMCA's response to United Industries' motion mischaracterizes the underlying facts, overstates the limited grounds upon which a non-signatory to a contract can be bound to an arbitration provision in that contract, and ignores critical differences between the facts of this case and the cases LMCA cites in support of its position.

(Pl.'s Reply p. 1.)

In terms of incorporation by reference, United Industries then argued "New York law, which LMCA asserts applies to this dispute, imposes an exacting standard for a contract to be incorporated by reference into another contract:

the paper to be incorporated into a written instrument by reference must be so referred to and described in the instrument that the paper may *be identified beyond all reasonable doubt.*" (Pl.'s Reply p. 3 (quotations omitted).) In arguing that the standard is not met in this case, United Industries asserted the 2010 Greenscapes License Agreement does not reference the 2004 TRA, much less purport to incorporate any of its terms. Rather, according to United Industries, the provision that LMCA references merely identifies it as Black Flag's broker for the 2010 Greenscapes License Agreement and establishes that as between Black Flag and Greenscapes, any monies that may be due LMCA shall be borne by Black Flag. "It does not recognize that any such monies are, in fact, due LMCA or identify any contract between LMCA and [Black Flag]," according to United Industries.

In terms of direct benefit and estoppel, United Industries reiterated that "[a] party that benefits from the contract containing the arbitration clause only indirectly is not estopped from denying an obligation to arbitrate." (Pl.'s Reply p.5 (citations omitted).) And United Industries again asserted "the only entity to receive any direct benefit from the 2004 TRA was Black Flag" and that it, United Industries, "subsequently obtained the [2010] Greenscapes License Agreement, not from LMCA's efforts under the [2004] TRA, but by paying millions of dollars to Black Flag ... and the other Homax entities in a separate, arms length asset purchase transaction." (Pl.'s Reply p.6.)

By order dated July 30, 2014 and docketed July 31, 2014, this court scheduled a hearing for the matter. At the August 11, 2014 hearing, the parties reiterated their written arguments. Counsel for United Industries, however, also made clear:

If they want to bring everything here and bring it all in court, we're not saying they can't sue us for any purpose. We're just saying they can't make us arbitrate, and that's a big distinction. We're not saying that they are out of court and they can't ever sue us. They can sue us. \*\*\* Whether they have a right to relief and whether they have a right to get any commissions from us is not the issue before the court. It's purely can they force us to go to ... arbitration when we never agreed to arbitrate. That's it. If they want to come here and sue us, if they think it is going to be more efficient to bring everybody here, file a counterclaim, they can do that. We can't stop them. But to force us to arbitrate, to force us to give up our Constitutional right to be heard in court, to be heard by a jury, that is something they cannot do.

(N.T., Aug. 11, 2014, p. 33.)

By order dated August 12, 2014 and docketed August 13, 2013, this court granted United Industries' motion to enjoin arbitration and ordered that LMCA was permanently enjoined from pursuing its pending arbitration against United Industries. Thereafter, LMCA appealed and this court ordered it to file a Pennsylvania Rule of Appellate Procedure 1925(b) statement. LMCA complied and makes the following complaints of error:

a. [this] [c]ourt erroneously failed to find that the [2004 TRA] is incorporated by reference into the [2010] Greenscapes License Agreement.

b. [this] [c]ourt erroneously failed to find that [United Industries] directly benefitted from and exploited the [2004 TRA].

c. [this] [c]ourt erroneously failed to find that [United Industries] is estopped from avoiding arbitration under the [2004 TRA].

d. [this] [c]ourt erroneously found that [United Industries] has a clear right to injunctive relief.

e. [this] [c]ourt erroneously failed to find that greater injury will arise from an injunction than if an injunction was not issued.

(Def.'s 1925(b) Statement ¶3.) This court will address LMCA's complaints under the following three categories: (a) incorporation by reference; (b) direct benefit and equitable estoppel; and (c) United Industries' right to permanent injunctive relief.

## II. DISCUSSION

The 2004 TRA sets forth the terms by which LMCA would broker and service licensing agreements for Black Flag in the United States and Canada. (2004 TRA pp.1-2." As such, the agreement affects interstate commerce and is subject to the Federal Arbitration Act ("FAA"). *See Moscatiello v. Hilliard*, 939 A.2d 325, 328 (Pa. 2007) (stating the FAA "applies to any agreement affecting interstate commerce.") "The fundamental purpose of the [FAA] is to relieve the parties from expensive litigation and to help ease the current congestion of court calendars." *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 660 (Pa. Super. Ct. 2013) (quotations omitted). "Its passage was a congressional declaration of a liberal federal policy favoring arbitration agreements." *Id.* (quotations omitted). "This policy, however, was not intended to render arbitration agreements more enforceable than other contracts, and the FAA had not been designed to preempt

all state law related to arbitration." *Id.* at 661 (quotations omitted). "Rather, when addressing the specific issue of whether there is a valid agreement to arbitrate, courts generally should apply ordinary state-law principles that govern the formation of contracts..." *Id.* (quotations omitted).

Under Pennsylvania law,

[a]rbitration is a matter of contract, and parties to a contract cannot be compelled to arbitrate a given issue absent an agreement between them to arbitrate that issue. Even though it is now the policy of the law to favor settlement of disputes by arbitration and to promote the swift and orderly disposition of claims, arbitration agreements are to be strictly construed and such agreements should not be extended by implication. In general, only parties to an arbitration agreement are subject to arbitration. However, a nonparty, such as a third-party beneficiary, may fall within the scope of an arbitration agreement if that is the parties' intent.

*Elwyn v. DeLuca*, 48 A.3d 457, 461 (Pa. Super. Ct. 2012) (citations omitted).

Under New York law, which governs the 2004 TRA, (*see* 2004 TRA ¶ 11.02), the law is the same. "Arbitration is a matter of contract, grounded in agreement of the parties." *Belzberg v. Verus Investments Holdings Inc.*, 999 N.E.2d 1130, 1133 (N.Y. 2013) (citations and quotations omitted). "As a consequence, notwithstanding the public policy favoring arbitration, nonsignatories are generally not subject to arbitration." *Id.* (citations omitted). "However, under limited circumstances nonsignatories may be compelled to arbitrate." *Id.* (citation omitted).

As a non-signatory to the 2004 TRA, United Industries is not subject to the arbitration clause contained therein unless LMCA can show an alternative basis for subjecting United Industries to the terms of the 2004 TRA. Courts have recognized five theories for binding non- signatories to arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing or alter ego; and (5) estoppel. *See, e.g., Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005); *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995). LMCA complains this court erred in not finding United Industries subject to the arbitration clause contained in the 2004 TRA under the first and fifth theories: incorporation by reference and equitable estoppel.

A. Incorporation by Reference

New York law, which LMCA asserts applies to this dispute, imposes a stringent standard for one contract to be incorporated by reference into another contract. Specifically, New York law requires that the contract to be incorporated by reference "must be so referred to and described in" the other contract that the contract to be incorporated "may be *identified beyond all reasonable doubt.*" *Paine Webber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996), citing *Chiacchia v. National Westminster Bank USA*, 124 A.D.2d 626, 628 (N.Y. App. Div. 2d Dep't 1986). Under New York law, "[w]hile a party's failure to read a duly incorporated document will not excuse the obligation to be bound by its terms, a party will not be bound to the terms of any document unless it is clearly identified in the agreement." *PaineWebber*, 81 F.3d at 1201 (citing New York law).

Here, the 2010 Greenscapes License Agreement

does not incorporate the 2004 TRA or its arbitration provision by reference. Neither the 2004 TRA nor its arbitration provision was referred to or described in the 2010 Greenscapes License Agreement. While Article 24 of the 2010 Greenscapes License Agreement identifies LMCA as the broker for the agreement and states that "[a]ny and all commissions, fees and or other monies due LMCA in connection with [the] [a]greement shall be borne exclusively by [Black Flag,]" that provision merely establishes that as between Greenscapes and Black Flag, any monies which may possibly be due LMCA shall be paid by Black Flag. It does not recognize that any such monies are in fact due to LMCA, much less identify the 2004 TRA. In the opinion of this court, the 2010 Greenscapes License Agreement's mere reference to LMCA is insufficient to incorporate the arbitration provision of a second contract that is not even identified in, let alone expressly incorporated into, that agreement. Moreover, the 2010 Greenscapes License Agreement contains an integration clause that states it — the 2010 agreement — is the entire agreement between Black Flag and Greenscapes, which makes it even less likely that an unmentioned, unidentified contract was meant to be incorporated by reference into it. It is for these reasons that there was no error in failing to find that the 2004 TRA is incorporated by reference into the 2010 Greenscapes License Agreement as LMCA complains.

B. Direct Benefit and Equitable Estoppel

Pursuant to the New York law which LMCA asserts applies to this dispute, "[a] nonsignatory to an agreement containing an arbitration clause that has knowingly received direct benefits under the agreement will be equitably estopped from avoiding the agreement's

obligation to arbitrate." *HRH Const. LLC v. Metro. Transp. Auth.*, 33 A.D.3d 568, 569 (N.Y App. Div. 1st Dept. 2006). Or stated another way, under this "direct benefits theory of estoppel," "a nonsignatory may be compelled to arbitrate where the nonsignatory 'knowingly exploits' the benefits of an agreement containing an arbitration clause, and receives benefits flowing directly from the agreement." *Belzberg*, 999 N.E.2d at 1134. Where benefits are merely "indirect," "a nonsignatory cannot be compelled to arbitrate a claim." *Id.* Benefits are "indirect where the nonsignatory exploits the contractual relation of the parties, but not the agreement itself." *Id.* In distinguishing between direct and indirect benefits, the Court of Appeals of New York has explained:

> The guiding principle is whether the benefit gained by the nonsignatory is one that can be traced directly to the agreement containing the arbitration clause. The mere existence of an agreement with attendant circumstances that prove advantageous to the nonsignatory would not constitute the type of direct benefits justifying compelling arbitration by a nonparty to the underlying contract.

*Id.* at 1136. In other words, "a connection based on mere extended causality is beyond the intended scope of the direct benefits theory." *Id.* The Court of Appeals of New York has also explained, "absent the nonsignatory's reliance on the agreement itself for the derived benefit, the theory would extend beyond those who gain something of value as a direct consequence of the agreement." *Id.*

With these principles in mind this court concluded that any benefit United Industries received from the 2004 TRA was at best "indirect" and it was not estopped

from avoiding arbitration. Here, LMCA argued United Industries directly benefited from the 2004 TRA because its "effort, expended pursuant to the [2004 TRA], is the sole reason why [United Industries] has been paid hundreds of thousands of dollars in royalties by Greenscapes under the [2010] Greenscapes License Agreement." (Def.'s Mem. pp. 6-7 (emphasis removed).) That is not true.

The royalties United Industries has been paid are "directly" traceable to its multi-million dollar purchase of the 2010 Greenscapes License Agreement as part of its 2011 APA with Black Flag and other Homax entities, not any work performed by LMCA pursuant to the 2004 TRA. The work LMCA performed under the 2004 TRA with respect to the 2010 Greenscapes License Agreement was performed for Black Flag and before any acquisition of assets by United Industries. As such, the entity to receive a "direct" benefit from the 2004 TRA was Black Flag and any benefit United Industries received by LMCA procuring the 2010 Greenscapes License Agreement in the first place was at best "indirect" as it is a "a connection based on mere extended causality[,] [which] is beyond the intended scope of the direct benefits theory." *Belzberg*, 999 N.E.2d at 1136 (while noting there would not have been profits for the person seeking to avoid arbitration to divert absent the agreement containing the arbitration clause, concluding the person could not be compelled to arbitrate as he was "several steps removed from the formation of the arbitration agreement" and the connection was "based on mere extended causality....").

Since the 2011 asset purchase, United Industries has not relied on the 2004 TRA in order to be paid royalties by Greenscapes. Rather, it has relied on the 2010 Greenscapes License Agreement itself and its purchase thereof in order

to be paid royalties by Greenscapes. Nor has it made claims against LMCA under the 2004 TRA or demanded or received any services LMCA owes to the "licensor" under the 2004 TRA. With these facts, the principle of equitable estoppel does not apply. LMCA's argument is based on mere extended causality, which is beyond the intended scope of the direct benefits estoppel theory. Thus, there was no error in failing to find United Industries (1) directly benefitted from and exploited the 2004 TRA or (2) is estopped from avoiding arbitration under the 2004 TRA as LMCA complains.

C. United Industries' Right to Permanent Injunctive Relief

"[A] party who can establish that [it] did not agree to arbitrate ... may be entitled to enjoin an arbitration proceeding." *Flightways Corp. v. Keystone Helicopter Corp.*, 331 A.2d 184, 185 (Pa. 1975). *See also AT & TMobility LLC v. Smith*, 2011 WL 5924460, at \*3 (E.D. Pa.2011) (noting the court's power to enjoin arbitration under the FAA if appropriate). In Pennsylvania, "[i]njunctive relief is considered an extraordinary equitable remedy and it is to be granted only where the ... party [seeking injunctive relief] has established that immediate and irreparable harm, which cannot be compensated by damages, will result if the injunction is denied." *Grimes v. Enter. Leasing Co. of Philadelphia, LLC*, 66 A.3d 330, 340 (Pa. Super. Ct. 2013), *appeal granted in part sub nom, Grimes v. Enter. Leasing Co. of Philadelphia*, 84 A.3d 1058 (Pa. 2014). "Furthermore, the party seeking to enjoin certain conduct must demonstrate that greater injury would result by refusing the injunction than by granting it." Grimes, 66 A.3d at 340. "Ultimately, the grant or denial of a permanent injunction will turn on whether

the [trial] court properly found that the party seeking the injunction established a clear right to relief as a matter of law." *Id.* (quotations omitted).

In this case, United Industries established a clear right to relief. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). As discussed above, there was no valid arbitration agreement between United Industries and LMCA. Accordingly, United Industries had a clear right to enjoin the arbitration LMCA had pending against it.

Moreover, without injunctive relief, United Industries would have suffered a legal wrong for which there is no adequate remedy at law. Courts have recognized "[b]eing forced to arbitrate a claim one did not agree to arbitrate constitutes an irreparable harm for which there is no adequate remedy at law." *UBS Sec., LLC v. Voegeli*, 405 F. App'x 550, 552 (2d Cir. 2011); *Law Office of Marvin Lundy v. Whitehaven S.F., LLC*, 2010 WL 4178643, at *7 (E.D. Pa. 2010) (recognizing the same). The harm occurs not only by forcing a party "to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable," *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003), but by infringing upon important rights, including constitutional rights, the party might otherwise enjoy, *see Pisano*, 77 A.3d at 661-62 (noting that "compelling arbitration upon [wrongful death claimants] who did not waive their right to a jury trial would infringe upon [the] wrongful death claimants' constitutional rights."); *NASDAQ OMX Grp., Inc. v. UBS Sec. LLC*, 957 F. Supp. 2d 388, 402 (S.D.N.Y. 2013) (noting "'[i]t is not merely

expense that underlies the prohibition against forcing a party to arbitrate a dispute that it did not agree to arbitrate,' but also the concern that a party will 'lose its right to have [its] claim adjudicated in a court of law, rather than an arbitral forum to whose jurisdiction it has not consented.'"). Loss of such fundamental rights constitutes irreparable harm for which there is no adequate remedy at law.

Finally, greater injury would result by refusing the injunction than by granting it. In comparison to the *per se* harm that would have befallen United Industries if LMCA would have been permitted to continue its arbitration against United Industries, LMCA could only point to potentially greater expenses and the possibility of inconsistent rulings as potential harm. These potential harms are not enough to offset the certain and significant harm to United Industries, particularly in light of the fact that LMCA has no legitimate right to have its claims against United Industries decided by arbitration as there is no arbitration agreement between them.

In conclusion, for the reasons provided above, United Industries had a clear right to relief as a matter of law. Thus, there was no error in permanently enjoining LMCA from pursuing its pending arbitration against United Industries and this court should be affirmed.