Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 17, 2019

**2019 CO 56**

**No. 19SA22,** *In re N.A. Rugby Union v. U.S. Rugby Football Union* — **Nonsignatory to an Arbitration Agreement** — **Principal and Agent** — **Estoppel** — **Third-Party Beneficiary.**

In this original proceeding pursuant to C.A.R. 21, the supreme court is asked to decide whether the district court erred when it ordered petitioner, a nonsignatory to an agreement, to arbitrate claims brought against it by respondents pursuant to an arbitration provision in the agreement that covered the parties (including respondents) and their agents. The district court found that because the nonsignatory was an agent for a signatory of the agreement, the nonsignatory fell "squarely within the broad language of the arbitration provision" and thus it was required to arbitrate.

The supreme court issued a rule to show cause and now makes the rule absolute. Although the court has not yet opined on the issue, the weight of authority nationally establishes that, subject to a number of recognized exceptions, only parties to an agreement containing an arbitration provision can compel or be subject to arbitration. The court adopts the general rule and its exceptions and concludes that, because the nonsignatory was never a party to the agreement at issue and because the respondents

have not established that any of the recognized exceptions apply, the district court erred in determining that the nonsignatory is subject to arbitration under the agreement.

The court therefore makes the rule to show cause absolute.

**2019 CO 56**

**Supreme Court Case No. 19SA22**
*Original Proceeding Pursuant to C.A.R. 21*
Boulder County District Court Case No. 18CV30533
Honorable Thomas Francis Mulvahill, Judge

**In Re**

**Plaintiffs:**

N.A. Rugby Union LLC and Douglas Schoninger,

v.

**Defendants:**

United States of America Rugby Football Union, Rugby International Marketing, Nigel Melville, Daniel Payne, and Robert Latham.

**Rule Made Absolute**
*en banc*
June 17, 2019

**Formerly Represented by Counsel (Counsel Permitted to Withdraw after Briefing Complete):**
N.A. Rugby Union LLC
Douglas  Schoninger

**Attorneys for Defendant Rugby International Marketing:**
Hutchinson Black and Cook, LLC
Daniel D. Williams
Christopher W. Ford
Lauren E. Groth
        *Boulder, Colorado*

No appearance on behalf of United States of America Rugby Football Union, Nigel Melville, Daniel Payne, or Robert Latham.

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1 In this original proceeding pursuant to C.A.R. 21, we must determine whether a nonsignatory to an arbitration agreement can be required to arbitrate under that agreement by virtue of the fact that it is a purported agent of a signatory to the agreement. Specifically, we are asked to decide whether the district court erred when it entered an order requiring petitioner Rugby International Marketing ("RIM"), which is a defendant below and a nonsignatory to a Professional Rugby Sanction Agreement (the "Sanction Agreement"), to arbitrate pursuant to an arbitration provision in that Agreement that covered the parties and their agents. The court found that because RIM was an agent for United States of America Rugby Football Union ("USAR"), a signatory of the Sanction Agreement, RIM fell "squarely within the broad language of the arbitration provision."

¶2 We issued a rule to show cause and now make the rule absolute. Although we have not yet opined on the issue, the weight of authority nationally establishes that, subject to a number of recognized exceptions, only parties to an agreement containing an arbitration provision can compel or be subject to arbitration. Here, because RIM was not a party to the Sanction Agreement and because respondents N.A. Rugby Union LLC d/b/a Professional Rugby Organization ("PRO Rugby") and Douglas Schoninger, who are the plaintiffs below, have not established that any of the recognized exceptions apply, we conclude that the district court erred in determining that RIM is subject to arbitration under the Sanction Agreement.

## I. Facts and Procedural History

¶3 Schoninger, a New York financier, was interested in launching a professional rugby league in the United States. Toward that end, he formed PRO Rugby and

3

approached USAR, which was the national governing body for rugby in the United States.

¶4    Ultimately, PRO Rugby and USAR entered into the Sanction Agreement, which authorized PRO Rugby to establish a professional rugby league in the United States.

¶5    As pertinent here, section 2.1 of the Sanction Agreement provided:

g.  N.A. Rugby Union LLC agrees to appoint Rugby International Marketing as its exclusive Player Representation agency through which it will contract with all Players and Coaching staff on a to be agreed fee basis (it being understood that such agency shall be the subject of an agency agreement and shall not be effective until such agency agreement has been executed by N.A. Rugby Union LLC and Rugby International Marketing). . . .

h.  N.A. Rugby Union LLC agrees to appoint Rugby International Marketing as a non-exclusive agency to present the commercial rights of the Competition to potential sponsors on a to be agreed fee basis (it being understood that such agency shall be the subject of an agency agreement and shall not be effective until such agency agreement has been executed by N.A. Rugby Union LLC and Rugby International Marketing).

¶6    Notably, it appears undisputed that as of the date of this Agreement, RIM did not yet exist (it was not established until two months later).

¶7    The Sanction Agreement also contained an arbitration provision that stated, in part:

[T]he parties agree that any claim or dispute between them or against any agent, employee, successor, or assign of the other, whether related to this Agreement or otherwise, and any claim or dispute related to this agreement or the relationship or duties contemplated under this Agreement, including the validity of this arbitration clause, shall be resolved by binding arbitration by the American Arbitration Association under the Commercial Arbitration Rules then in effect.

4

¶8    RIM was not a party to the Sanction Agreement. Moreover, notwithstanding the fact that the Agreement states that PRO Rugby agreed to appoint RIM as its agent for player representation and commercial rights, no such agreement was ever executed.

¶9    After allegedly investing six million dollars of his personal funds, Schoninger folded the league after its first season. He and PRO Rugby then filed suit in Boulder County District Court, naming nine different defendants, including USAR and RIM, and alleging that the defendants had engaged in a concerted effort to force PRO Rugby out of business.

¶10    In their complaint, plaintiffs asserted an array of tort and contract claims, the latter arising out of alleged breaches of the Sanction Agreement.

¶11    RIM subsequently moved to dismiss plaintiffs' breach of contract claims against it based on the undisputed fact that it was not a party to the contract. Plaintiffs responded that the above-quoted provisions of the Sanction Agreement demonstrated that USAR had assigned to RIM the obligations under that Agreement to act as PRO Rugby's exclusive player representation agency and to be the nonexclusive agency to present the commercial rights of the competition to potential sponsors. Based on this alleged assignment, plaintiffs contended that RIM was bound by the Agreement.

¶12    The district court disagreed with plaintiffs' assertion, noting that (1) a party to a contract cannot delegate duties to a nonparty without the nonparty's consent; (2) plaintiffs had conceded that RIM did not affirmatively agree to any promises in the Sanction Agreement; and (3) plaintiffs cited no evidence of any other agreement by RIM

to assume any of the Sanction Agreement's obligations. The court thus dismissed plaintiffs' contract claims against RIM.

¶13 After further pretrial proceedings resulted in orders compelling arbitration as to certain defendants and dismissing for lack of personal jurisdiction the claims against certain other defendants, RIM became the sole remaining defendant in the lawsuit. Plaintiffs then moved to stay the proceedings against RIM to allow plaintiffs to arbitrate their claims against it. In support of this motion, plaintiffs argued that the plain language of the Sanction Agreement's arbitration provision, which bound the parties and agents of the other, bound RIM because it was allegedly USAR's agent. Plaintiffs further contended that, in any event, any dispute as to whether the claims at issue were arbitrable was to be decided by the arbitrator. RIM opposed the motion to stay, arguing that it was not a party to the Sanction Agreement and that it had never manifested an agreement to be bound by that Agreement's terms, including the arbitration provision. In light of this position, RIM did not directly respond to plaintiffs' assertion that RIM was bound by the arbitration provision because it was USAR's agent.

¶14 Notwithstanding its prior order dismissing the contract claims against RIM on the ground that RIM was not a party to the Sanction Agreement, the district court granted plaintiffs' motion to stay the case pending arbitration. In support of this ruling, the court did not rely on any claim that RIM was a party to the Sanction Agreement or that it had a prospective agency agreement with PRO Rugby. Instead, the court focused on the purported agency relationship between RIM and USAR. Specifically, the court found that the arbitration provision is phrased broadly and plainly subjects agents of both PRO

6

Rugby and USAR to resolution by arbitration of any disputes brought by the other that are related to the Sanction Agreement. The court further found that USAR's control of and delegation of obligations to RIM (notwithstanding the court's prior finding that USAR had *not* delegated any obligations to RIM) established that RIM was USAR's agent "and thus squarely within the broad language of the arbitration provision." The court therefore ordered a "full stay of this case pending the completion of arbitration."

¶15 RIM then filed the present C.A.R. 21 petition, and we issued a rule to show cause.

## II. Analysis

¶16 We begin by discussing our jurisdiction to hear this matter. After setting forth our standard of review, we proceed to analyze whether and in what circumstances a signatory can compel a nonsignatory to arbitrate by virtue of an arbitration provision contained in an agreement to which the nonsignatory is not a party. We conclude that the district court erred in compelling RIM to arbitrate here because RIM was not a party to the Sanction Agreement and because plaintiffs have not established that RIM fell within any of the recognized principles under which a contract signatory may compel a nonsignatory to arbitrate.

## A. Original Jurisdiction

¶17 The exercise of our original jurisdiction under C.A.R. 21 rests within our sole discretion. *Fognani v. Young*, 115 P.3d 1268, 1271 (Colo. 2005). An original proceeding under C.A.R. 21 is an extraordinary remedy that is limited in purpose and availability. *Wesp v. Everson*, 33 P.3d 191, 194 (Colo. 2001). It provides a remedy when an appellate remedy would be inadequate. *Fognani*, 115 P.3d at 1271.

7

¶18     Here, we conclude that RIM lacks an adequate appellate remedy. Under prevailing statutory and case law, RIM has no right to file an interlocutory appeal from an order granting a motion to compel arbitration. *See* § 13-22-228(1)(a)–(b), C.R.S. (2018); *see also Lane v. Urgitus*, 145 P.3d 672, 679 (Colo. 2006) ("[A] trial court order granting a motion to stay the proceedings and to compel arbitration is an 'interlocutory order' that is not immediately appealable."). Accordingly, absent our intervention, RIM could be required to expend significant resources completing arbitration and confirming any arbitration award before it would have the opportunity to appeal. Because requiring RIM to do so would effectively deny it the relief that it seeks, we deem it appropriate to exercise our original jurisdiction in this case. *See Radil v. Nat'l Union Fire Ins. Co.*, 233 P.3d 688, 691–92 (Colo. 2010) ("Because a trial court order compelling arbitration is not immediately appealable, we may exercise our original jurisdiction to review such an order.").

## B. Standard of Review and Applicable Law

¶19     The scope of an arbitration agreement is a question of law that we review de novo, applying principles governing contract interpretation. *Id.* at 692. In construing an arbitration agreement, we look to the plain and ordinary meaning of the terms of that agreement, and we construe the agreement to effectuate the parties' intent and the purposes of the agreement. *Id.* In general, we will resolve ambiguities in favor of arbitration, which is a preferred method of dispute resolution in Colorado. *Id.*

¶20     It is well-settled that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."

8

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *accord Lane*, 145 P.3d at 679; *see also Smith v. Multi-Fin. Sec. Corp.*, 171 P.3d 1267, 1272 (Colo. App. 2007) ("Generally, when the requirement to arbitrate is created by an agreement, it can be invoked only by a signatory of the agreement, and only against another signatory.").

¶21    Although we do not appear to have spoken on the issue, other courts, including divisions of our court of appeals, have recognized certain exceptions to this general rule. For example, courts have observed that ordinary principles of contract and agency law may apply to bind a nonsignatory to an arbitration agreement. *See, e.g., Covington v. Aban Offshore Ltd.*, 650 F.3d 556, 558 (5th Cir. 2011); *Smith*, 171 P.3d at 1272. Specifically, these courts have recognized the following theories for binding a nonsignatory to an arbitration agreement: (1) incorporation of an arbitration provision by reference in another agreement; (2) assumption of the arbitration obligation by the nonsignatory; (3) agency; (4) veil-piercing/alter ego; (5) estoppel; (6) successor-in-interest; and (7) third-party beneficiary. *See Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 356 (5th Cir. 2003); *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995); *Smith*, 171 P.3d at 1272.

¶22    We agree that the foregoing general rule and the above-described exceptions to it comport with settled principles of contract and agency law, and we now adopt that rule and those exceptions. Having done so, we turn to the merits of RIM's contentions.

## C.  Application

¶23    RIM contends that neither general contract principles nor any of the above-described exceptions apply to require it to arbitrate here.

9

¶24 Plaintiffs respond that under the plain language of the Sanction Agreement, RIM is bound by the arbitration clause and that, in any event, the Agreement delegated all issues of arbitrability to the arbitrator. Based on this, plaintiffs contend that we should discharge our order to show cause without reaching the above-described exceptions. Plaintiffs argue in the alternative, however, that should we reach the exceptions, then RIM is still bound by the arbitration provision of the Sanction Agreement because it was a third-party beneficiary of that Agreement, it was USAR's agent, and it is bound under a theory of equitable estoppel because it is seeking to enforce the rights and benefits that it received under the Agreement.

¶25 We view plaintiffs' contentions as framing the issues now before us, and we address each of those contentions in turn.

¶26 Plaintiffs first contend that the Sanction Agreement clearly and unambiguously required arbitration of any claim or dispute between PRO Rugby and USAR or against "any agent, employee, successor, or assign of the other, whether related to [the Sanction] Agreement or otherwise." Plaintiffs further contend that because RIM is USAR's agent, it is bound by the arbitration provision's above-quoted plain language. Plaintiffs never explain, however, how a party to a contract can bind a nonparty to the terms of that contract without establishing legal or equitable grounds for doing so (e.g., assumption by the nonsignatory of obligations under the agreement, applicable agency principles, veil-piercing, equitable estoppel, or the nonsignatory's status as a successor-in-interest to a party to the contract or as a third-party beneficiary of the contract).

10

¶27    Nor are we persuaded by plaintiffs' reliance on our decision in *Allen v. Pacheco*, 71 P.3d 375 (Colo. 2003). Although we said in that case that "a non-party may be bound by the terms of an agreement if the parties so intend," *id.* at 379, that statement must be read in context. In that case, the plaintiff brought a wrongful death action against medical providers, including a health maintenance organization ("HMO"), arising out of the death of her husband. *Id.* at 377. Her late husband's agreement with the HMO contained an arbitration clause that applied to claims asserted by "a Member [i.e., of the HMO], or by a Member's heir or personal representative, or by a person claiming that a duty to him or her arises from a Member's relationship with [the HMO] incident to this Agreement." *Id.* We were thus called on to decide, as pertinent here, whether the scope of the agreement included nonparty spouses. *Id.* at 379.

¶28    It is in this context that we said that the agreement applied to nonparty spouses because "(a) a non-party may be bound by the terms of an agreement if the parties so intend and because (b) a spouse is an 'heir' under the meaning of the agreement." *Id.* In so stating, we emphasized, "So long as [the nonparty spouse] is within the category of heirs, personal representatives, or persons claiming special duties, she is bound by the arbitration agreement." *Id.* at 380. And we further pointed out that we were construing an arbitration provision that expressly purported to bind certain nonparties "who are in privity with the signatory, namely an 'heir or personal representative or . . . a person claiming that a duty to him or her arises from a Member's relationship with [the HMO].'" *Id.* at 380 n.4.

11

¶29    Accordingly, notwithstanding plaintiffs' assertion to the contrary, *Allen* does not create a novel (and seemingly unlimited) principle that a nonsignatory to a contract can be bound to an arbitration clause whenever the signatories to the contract so intend. That broad a principle would lead to absurd results (e.g., applied literally, such a principle would allow a signatory to argue successfully that a complete stranger to the agreement and to the parties thereto was bound because the parties to the agreement intended to bind the stranger). Rather, our statements in *Allen* must be read in context. When thus construed, they are fully consistent with the settled contractual and equitable principles set forth above because the plaintiff in *Allen* (1) was asserting rights under her late husband's agreement with the HMO and therefore was equitably estopped from disclaiming her obligations under that same agreement; (2) was in privity with her late husband; and (3) was an heir and thus a successor-in-interest and third-party beneficiary under the agreement.

¶30    The cases that we cited in *Allen*, 71 P.3d at 379–80, in support of the proposition that a nonparty may fall within the scope of an agreement if the parties so intend confirm this point. For example, *Jefferson County School District No. R-1 v. Shorey,* 826 P.2d 830, 843 (Colo. 1992), concerned whether an employee who was a third-party beneficiary to a collective bargaining agreement had standing to sue for benefits under that agreement (we said she did but concluded that her claim should be stayed pending exhaustion of the grievance process established by the collective bargaining agreement). *Parker v. Center for Creative Leadership,* 15 P.3d 297, 298 (Colo. App. 2000), concerned whether a third-party beneficiary who was seeking to enforce a contract was bound by the

12

arbitration provision of that same contract (the division said he was). And both *Everett v. Dickinson & Co.*, 929 P.2d 10, 12 (Colo. App. 1996), and *Eychner v. Van Vleet,* 870 P.2d 486, 489 (Colo. App. 1993), concerned whether a *nonsignatory* to an arbitration agreement could compel a *signatory* to arbitrate, a scenario not at issue here. Notably, in *Everett*, the nonsignatory sought to enforce the arbitration provision at issue based on the very types of contract principles set forth above. *See Everett*, 929 P.2d at 12–13 (concluding that the nonsignatory could not enforce an arbitration provision to which it was not a party because it was not a third-party beneficiary of that agreement).

¶31    In short, neither *Allen* nor the cases on which it relied support the proposition that a nonsignatory like RIM can be compelled to arbitrate merely because the signatories to an arbitration agreement, without more, intended to bind the nonsignatory. Rather, the signatory must establish one of the recognized legal or equitable bases to compel the nonsignatory to arbitrate.

¶32    For similar reasons, we reject plaintiffs' contention that we should uphold the district court's order requiring RIM to arbitrate because, even if there were a dispute as to whether plaintiffs' claims against RIM are arbitrable, under the Sanction Agreement, issues of arbitrability are to be decided by the arbitrator. Although plaintiffs contend that when contracting parties empower an arbitrator to determine issues of arbitrability, this constitutes "clear and unmistakable evidence of intent to delegate those issues to the arbitrator," *Ahluwalia v. QFA Royalties, LLC*, 226 P.3d 1093, 1098 (Colo. App. 2009), plaintiffs again do not explain how the contracting parties' intent can bind a nonparty to a contract, absent a legal or equitable basis for doing so.

¶33    We therefore must proceed to consider plaintiffs' alternative arguments that RIM is bound by the arbitration provision at issue because (1) it was a third-party beneficiary of the Sanction Agreement; (2) it was USAR's agent; and (3) it is equitably estopped from avoiding the arbitration provision because it is seeking to enforce rights and benefits conferred on it by the Sanction Agreement.  We address and reject each of these arguments in turn.

¶34    The "'critical fact' that determines whether a nonsignatory is a third-party beneficiary is whether the underlying agreement 'manifest[s] an intent to confer *specific legal rights* upon [the nonsignatory].'"  *Ouadani v. TF Final Mile LLC*, 876 F.3d 31, 39 (1st Cir. 2017) (quoting *InterGen N.V. v. Grina*, 344 F.3d 134, 147 (1st Cir. 2003)).  Nonsignatories who are intended third-party beneficiaries of an agreement containing an arbitration clause are bound by that agreement.  *See id.*; *see also Everett*, 929 P.2d at 12 ("A third-party beneficiary may enforce a contract only if the parties to that contract intended to confer a benefit on the third party when contracting; it is not enough that some benefit incidental to the performance of the contract may accrue to the third party.").

¶35    Here, the Sanction Agreement did not confer—and could not have conferred—specific legal rights on RIM because at the time that Agreement was signed, RIM did not exist.  Moreover, to the extent that the Sanction Agreement envisioned a future conferral of rights or benefits on RIM, those rights or benefits would have been bestowed by way of a separate agreement between RIM and PRO Rugby, not by way of the Sanction Agreement.  Accordingly, the record does not support plaintiffs' assertion that RIM was

14

a third-party beneficiary of the Sanction Agreement and therefore is bound by that Agreement's arbitration provision.

¶36 Nor is RIM bound by the Sanction Agreement's arbitration provision based on plaintiffs' assertions that RIM was an agent of USAR's and that USAR bound RIM to that provision. The agency exception to the general principle that a party cannot be required to arbitrate any dispute that it has not agreed to arbitrate is premised on traditional principles of agency law. *Thomson-CSF*, 64 F.3d at 777. Under those principles, an agent may bind a principal to a contract. *Great W. Fin. Co. v. Davis*, 272 P. 11, 11 (Colo. 1928); *accord Covington*, 650 F.3d at 559; *Walker v. Collyer*, 9 N.E.3d 854, 864 (Mass. App. Ct. 2014); Restatement (Third) of Agency § 6.01 (Am. Law Inst. 2006). A principal, however, cannot bind an agent. *Great W. Fin. Co.*, 272 P. at 11; *accord Covington*, 650 F.3d at 559; *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 317 (5th Cir. 2011); *Walker*, 9 N.E.3d at 864; Restatement (Third) of Agency, at § 6.01.

¶37 Here, assuming without deciding that RIM and USAR had an agency relationship, USAR was the principal and RIM was the agent. Accordingly, under the above-noted principles, USAR could not bind RIM to the Sanction Agreement's arbitration provision, and thus, RIM is not bound by that provision.

¶38 Finally, with respect to plaintiffs' assertion that RIM is equitably estopped from avoiding the arbitration provision at issue, we note that the principle of equitable estoppel can bind a nonsignatory to an arbitration provision in an agreement when the nonsignatory has knowingly exploited that agreement, as, for example, by claiming or accepting direct benefits of the agreement. *See Ouadani*, 876 F.3d at 38 ("Equitable

15

estoppel 'precludes a party from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligations.'") (quoting *InterGen N.V.*, 344 F.3d at 145); *Smith*, 171 P.3d at 1274 ("We conclude that the beneficiaries are estopped from avoiding the arbitration provisions of the same agreements whose benefits they seek to enforce.").

¶39 Here, although plaintiffs assert that RIM has received multiple benefits under the Sanction Agreement, plaintiffs again ignore the fact that at the time the Agreement was signed, RIM did not even exist. Moreover, as noted above, RIM received *no* benefits under the Sanction Agreement. Rather, it received a promise of a subsequent agreement that would have provided benefits, but PRO Rugby and RIM never consummated that agreement. And contrary to plaintiffs' assertions, RIM is not seeking to enforce any right or benefit under the Sanction Agreement. Indeed, it has asserted *no* claims or counterclaims under that Agreement. To the contrary, it successfully argued that the contract claims against it should be dismissed because it is *not* a party to the Agreement. Having asserted no claim for rights or benefits under the Agreement, the equitable estoppel doctrine does not apply to bind RIM to that Agreement's arbitration provision. *See Ouadani*, 876 F.3d at 38; *Smith*, 171 P.3d at 1274.

¶40 For all of these reasons, we conclude that RIM, as a nonsignatory to the Sanction Agreement, is not bound by that Agreement's arbitration provision, and therefore, the trial court erred in concluding that RIM was required to arbitrate the claims against it.

16

## III. Conclusion

¶41     In general, when a requirement to arbitrate is created by an agreement, it can only be invoked by and enforced against a signatory to that agreement. This general rule, however, is subject to certain exceptions, and a nonsignatory to an agreement containing an arbitration provision can be compelled to arbitrate when, as pertinent here, the nonsignatory is a third-party beneficiary of the agreement, traditional agency principles bind the nonsignatory to the arbitration provision, or the nonsignatory is equitably estopped from denying the applicability of the arbitration provision because, among other things, it is seeking to enforce rights or benefits conferred on it by the agreement containing the arbitration provision at issue.

¶42     Here, plaintiffs have not established that any of the foregoing exceptions apply. Accordingly, we conclude that the district court erred in determining that RIM is required to arbitrate the claims against it. We therefore make the rule to show cause absolute.