The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
June 25, 2026

**2026 COA 54**

**No. 25CA0855, *Wright v. Goldstein* — Courts and Court Procedure — Colorado Uniform Arbitration Act — Vacating Award — No Agreement to Arbitrate**

A division of the court of appeals considers whether, under the Colorado Revised Uniform Arbitration Act (CRUAA), §§ 13-22-201 to -230, C.R.S. 2025, a respondent in an arbitration proceeding waives their right to object to arbitrability based on the absence of an arbitration agreement by participating in the arbitration proceeding for almost a year before objecting to the arbitrator shortly before the arbitration hearing. Based on the CRUAA's language in section 13-22-223(1)(e), C.R.S. 2025, which requires a party to object to the arbitrator "not later than the beginning of the arbitration hearing," the division concludes that the respondent didn't waive his objection. The division disagrees with a prior division's contrary conclusion in *Harper Hofer & Associates, LLC v. Northwest Direct*

*Marketing, Inc.*, 2014 COA 153, ¶ 28, which held that an objector who participated in the arbitration proceeding waived its objection by failing to seek a judicial stay of the arbitration before the arbitration hearing commenced. Because the respondent in this case timely objected to the arbitrator as required by statute, the division reverses in part the district court's order that the respondent waived his objection and remands the case for further findings of fact regarding whether an arbitration agreement existed.

The division rejects the appellants' other contentions and therefore affirms the judgment in part, reverses it in part, and remands the case with directions.

Court of Appeals No. 25CA0855
Jefferson County District Court No. 22CV31103
Honorable Ryan P. Loewer, Judge

James Wright; Damages Inc., LLC, a Colorado limited liability company; and And Justice For All, LLC, a Colorado limited liability company,

Plaintiffs-Appellants,

v.

Daniel Goldstein; Altru-Media LLC, a Colorado limited liability company; and Page 1 Solutions, LLC, a Colorado limited liability company,

Defendants-Appellees.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE SULLIVAN
Pawar and Meirink, JJ., concur

Announced June 25, 2026

Sullenberger Roskamp PLLC, Neil S. Sullenberger, Jennifer L. Roskamp-Fields, Denver, Colorado, for Plaintiffs-Appellants

Fairfield and Woods, P.C., John M. Tanner, Denver, Colorado, for Defendants-Appellees

¶ 1     If a litigant who is unwilling to arbitrate believes no valid agreement to arbitrate exists, the Colorado Revised Uniform Arbitration Act (CRUAA), §§ 13-22-201 to -230, C.R.S. 2025, requires that they register their objection with the arbitrator no later than the beginning of the arbitration hearing. § 13-22-223(1)(e), C.R.S. 2025.  In this commercial dispute brought by plaintiffs, James Wright; Damages Inc., LLC; and And Justice For All, LLC (AJFA) (collectively, Wright plaintiffs), against defendants, Daniel Goldstein; Altru-Media LLC; and Page 1 Solutions, LLC (collectively, Goldstein defendants), and others, Wright raised his objection with the arbitrator four days before the arbitration hearing commenced.  We therefore conclude that Wright complied with the statute's timing requirement; thus, we reverse the district court's order that he waived his objection and remand the case with directions.  In all other respects, we affirm the judgment.

## I.     Background

¶ 2     Wright is the president and manager of Damages Inc., and Goldstein is the president of Altru-Media and Page 1 Solutions.  In 2012, the pair formed AJFA, a company that would develop,

manage, and market a network of legal advertising websites and donate a percentage of its proceeds to social justice causes. Damages Inc. and Altru-Media (a wholly owned subsidiary of Page 1 Solutions) each owned a fifty percent membership interest in AJFA.

¶ 3 As their new venture was getting off the ground, Wright and Goldstein — as corporate representatives of Damages Inc. and Altru-Media, respectively — entered into an operating agreement and a memorandum of understanding (MOU) regarding AJFA. The two signed both documents in June 2012, although they backdated the operating agreement to March 16, 2012, the date they had filed AJFA's articles of organization with the Colorado Secretary of State. The MOU contained a broad arbitration clause:

> [A]ny controversy or claim arising out of or directly or indirectly relating to this MOU shall be submitted to the American Arbitration Association ("AAA") for binding arbitration in accordance with the Commercial Arbitration Rules of the AAA.

¶ 4 AJFA was never profitable. And in 2019, Goldstein took steps to sell Page 1 Solutions' assets. Believing this violated AJFA's operating agreement, Wright filed a district court complaint on behalf of himself, Damages Inc., and AJFA against the Goldstein

defendants and others.[1]  The complaint asserted claims for breach

of contract, breach of fiduciary duty, fraud by false representation,

fraud by omission, conspiracy, misappropriation of trade secrets,

civil theft, conversion, and unjust enrichment.

¶ 5     The Goldstein defendants responded by moving to compel

arbitration under the MOU's arbitration clause and initiating

arbitration proceedings.  The Wright plaintiffs opposed arbitration,

contending that only the operating agreement, not the MOU,

governed their claims.[2]  The district court granted the Goldstein

defendants' motion and ordered that the Wright plaintiffs' claims

against the Goldstein defendants proceed to arbitration.

¶ 6     In arbitration, the Goldstein defendants sought a declaratory

judgment that they weren't liable to the Wright plaintiffs for any of

the nine claims asserted in the district court case and that they

---

[1] In addition to suing the Goldstein defendants, the Wright plaintiffs
brought claims against Page 1 Solutions' buyer, Advice Media LLC;
its principal, Shawn Miele; and Altru-Media's vice president, Troy
Dunn.  But those claims didn't proceed to arbitration and aren't at
issue in this appeal.

[2] The Wright plaintiffs also moved for a preliminary injunction and
temporary restraining order halting the arbitration proceedings.
But the district court found that the Wright plaintiffs abandoned
their motion after they asked to continue the preliminary injunction
hearing and never asked for it to be rescheduled.

owned several of the disputed domain names.  After a hearing, the arbitrator determined that the Goldstein defendants weren't liable on any of the Wright plaintiffs' claims but denied their request for a declaration that they owned the domain names.  The arbitrator also awarded the Goldstein defendants their attorney fees.

¶ 7     The Wright plaintiffs then moved the district court to vacate the arbitration award, while the Goldstein defendants filed a competing motion to confirm the award.  The court granted the motion to confirm and denied the motion to vacate.

¶ 8     The Wright plaintiffs appeal the court's confirmation order under section 13-22-228(1)(c), C.R.S. 2025.  They contend that the district court erred by denying their motion to vacate because (1) the arbitrator lacked jurisdiction over Wright in his individual capacity; (2) the arbitrator lacked jurisdiction over Goldstein and Page 1 Solutions; (3) the arbitrator exceeded her authority by determining arbitrability; and (4) the arbitrator exceeded her authority by making factual findings about nonparty witnesses. Both sides also request their appellate attorney fees under a prevailing party clause within the MOU.

## II. Arbitral Jurisdiction Over Wright

¶ 9 Wright contends that the arbitrator lacked jurisdiction over him because he signed the MOU (containing the arbitration clause) as a corporate representative of Damages Inc., not in his individual capacity. For their part, the Goldstein defendants contend that the district court and the arbitrator correctly determined that Wright waived this objection by raising it too late. Based on the CRUAA's language, we conclude Wright didn't waive this argument.

### A. Additional Background

¶ 10 During a prearbitration conference, which occurred almost a year into the arbitration proceeding and just four days before the scheduled arbitration merits hearing, Wright objected to the arbitrator exercising jurisdiction over him in his individual capacity. The arbitrator ordered briefing on the issue and delayed the hearing to resolve the question.

¶ 11 After briefing, the arbitrator determined that Wright had waived his objection to arbitral jurisdiction by failing to raise it earlier and by failing to distinguish between himself and his company, Damages Inc., in his filings. The case then proceeded to a three-day arbitration hearing.

¶ 12    After the arbitrator issued her decision, Wright again raised his objection before the district court in his motion to vacate the arbitration award.  The district court, relying on *Harper Hofer & Associates, LLC v. Northwest Direct Marketing, Inc.*, 2014 COA 153, concluded that Wright had waived his objection by failing to raise it earlier before the court in a motion to stay the arbitration.

## B.    Standard of Review and Applicable Law

¶ 13    We review de novo a district court's legal conclusions on a motion to confirm or vacate an arbitration award.  *Brightstar LLC v. Jordan*, 2024 COA 39, ¶ 9.

¶ 14    We also review de novo questions of statutory interpretation. *Trinidad Area Health Ass'n v. Trinidad Ambulance Dist.*, 2024 COA 113, ¶ 23.  "[O]ur obligation is to give full effect to the legislative intent."  *Est. of Breeden v. Gelfond*, 87 P.3d 167, 170 (Colo. App. 2003).  In doing so, we look to the entire statutory scheme to give consistent, harmonious, and sensible effect to all its parts, and we apply words and phrases according to their plain and ordinary meaning.  *Trinidad*, ¶ 23.  Moreover, when construing a statute, we must respect the General Assembly's choice of language.  *UMB Bank, N.A. v. Landmark Towers Ass'n*, 2017 CO 107, ¶ 22.

6

¶ 15    The CRUAA, modeled after the Uniform Arbitration Act (2000) promulgated by the National Conference of Commissioners on Uniform State Laws, *see* 7 pt. 1A U.L.A. 14-118 (2025), provides a uniform statutory framework for arbitration to encourage the settlement of disputes. *Lane v. Urgitus*, 145 P.3d 672, 678 (Colo. 2006). When interpreting a statute based on a uniform act, like the CRUAA, we may consider authorities from other jurisdictions that have also adopted the act. *Hagerty Ins. Agency, LLC v. Luxury Asset Cap., LLC*, 2023 COA 57, ¶ 11; *accord Est. of Guido v. Exempla, Inc.*, 2012 COA 48, ¶ 22 (consulting decisions from other jurisdictions that have adopted the Uniform Arbitration Act).

¶ 16    To promote the finality of arbitration awards and discourage piecemeal litigation, the CRUAA strictly limits a reviewing court's role. *Herrera v. Santangelo L. Offs., P.C.*, 2022 COA 93, ¶ 12. Specifically, a reviewing court may decline to confirm an arbitration award only for the limited reasons enumerated in section 13-22-223(1). *Treadwell v. Vill. Homes of Colo., Inc.*, 222 P.3d 398, 401 (Colo. App. 2009).

¶ 17     The absence of an agreement to arbitrate is one such reason, albeit one that a litigant can waive.  Section 13-22-223(1)(e) states as follows:

> Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if the court finds that . . . [t]here was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection under section 13-22-215(3)[, C.R.S. 2025,] not later than the beginning of the arbitration hearing . . . .

¶ 18     If a party clearly and explicitly reserves the right to object to arbitrability in compliance with the statute, a party's participation in the arbitration doesn't preclude them from later challenging the arbitrator's authority in court.  *See Ahluwalia v. QFA Royalties, LLC*, 226 P.3d 1093, 1098 (Colo. App. 2009).  *But see Harper*, ¶¶ 22-25 (declining to follow *Ahluwalia* and concluding a party waives any objection to arbitrability absent a request for court review *before* proceeding to the arbitration hearing).

### C.    Analysis

¶ 19     Because Wright objected to the arbitrator exercising jurisdiction over him in his individual capacity before the beginning of the arbitration hearing, we conclude the district court erred by

failing to either vacate the arbitration award or make findings that an arbitration agreement existed between Wright and the Goldstein defendants.

¶ 20    Under the CRUAA's plain language, a party may move to vacate an arbitration award on the grounds that no agreement to arbitrate exists between the parties. § 13-22-223(1)(e). A party risks waiving this argument if they participate in the arbitration without raising their objection "not later than the beginning of the arbitration hearing." *Id.* All here agree that Wright raised his objection to the arbitrator four days before the scheduled arbitration hearing. By doing so, Wright complied with the statute's timing requirement and thus preserved his ability to reraise his objection before the district court in his motion to vacate the arbitration award.

¶ 21    True, Wright didn't raise his objection *to the court* through a motion to stay the arbitration before the arbitration hearing commenced. *See* § 13-22-207(2), C.R.S. 2025 (permitting the court to stay an arbitration proceeding based on the absence of an agreement to arbitrate). But nothing in section 13-22-223(1)(e) requires such a motion. Instead, the objecting party need only

"rais[e] the objection under section 13-22-215(3)" not later than the beginning of the arbitration hearing. § 13-22-223(1)(e). That section, in turn, details the process for making objections *to the arbitrator* — the exact process that Wright followed. *See* § 13-22-215(3) (stating the arbitrator "may adjourn the hearing from time to time" upon a party's request and for "good cause shown"). So, by the plain language of the statute, Wright didn't waive his objection.

¶ 22    Court decisions from other jurisdictions construing similar statutory language support our interpretation. In *Holcim (Texas) Ltd. Partnership v. Humboldt Wedag, Inc.*, 211 S.W.3d 796, 802-03 (Tex. App. 2006), for example, the court construed the Texas Arbitration Act, modeled off the prior 1956 Uniform Arbitration Act, which stated that a court must vacate an arbitration award if "there was no agreement to arbitrate, the issue was not adversely determined . . . , and the party did not participate in the arbitration

hearing without raising the objection."[3] Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(4) (West 2025). The court determined that the statutory language "on its face" doesn't require a party to seek a judicial stay of the arbitration; rather, objecting to the arbitrator sufficiently preserved the issue for a later motion to vacate the award. *Holcim*, 211 S.W.3d at 803.

¶ 23    And in *Azcon Construction Co. v. Golden Hills Resort, Inc.*, 498 N.W.2d 630, 632-33 (S.D. 1993), the court reached the same conclusion based on nearly identical language in South Dakota's arbitration statute. *See* S.D. Codified Laws § 21-25A-24(5) (2025). The court explained that seeking a judicial stay of the arbitration was optional, not mandatory, in part because requiring such a motion would defeat the purpose of creating an arbitration system:

---

[3] Although the 1956 uniform act's language isn't identical to the 2000 act on which Colorado's statute is based, we perceive no meaningful difference in how the two provisions treat a party's objection to the absence of an arbitration agreement. The 2000 act requires the party to raise their objection to the arbitrator "not later than the beginning of the arbitration hearing," Unif. Arb. Act § 23(5) (2000), 7 pt. 1A U.L.A. 92 (2025), while the 1956 act requires that the party "not participate in the arbitration hearing without raising the objection," Unif. Arb. Act § 12(5) (1956), 7 pt. 1A U.L.A. 537 (2025). Under either version, Wright's objection four days before the arbitration hearing was timely.

11

obtaining a quick and inexpensive resolution of contractual disputes without the expense and delay of extended court proceedings. *Azcon*, 498 N.W.2d at 633.

¶ 24 Other decisions are in accord. *See, e.g.*, *Wolfer v. Microboards Mfg., LLC*, 654 N.W.2d 360, 365 (Minn. Ct. App. 2002) (explaining that, under Minnesota's then-effective version of the 1956 Uniform Arbitration Act, "a party may be estopped from arguing that no arbitration agreement exists if an objection is not raised during the arbitration hearing"); *Amerisure Mut. Ins. Co. v. Glob. Reinsurance Corp. of Am.*, 927 N.E.2d 740, 747-48 (Ill. App. Ct. 2010) (construing Illinois' version of the 1956 Uniform Arbitration Act and determining that seeking a judicial stay of arbitration is permissive, not mandatory).

¶ 25 We disagree with the division's contrary conclusion in *Harper*, which the district court relied on when deciding that Wright waived his objection. *See Digit. Landscape Inc. v. Media Kings LLC*, 2018 COA 142, ¶ 68 (one division of the court of appeals isn't bound by another division's decision). The *Harper* division determined that objecting only to the arbitrator didn't avoid waiver; the objecting party must instead ask the trial court to decide the validity of the

arbitration clause under section 13-22-207(2) *before* proceeding to the arbitration hearing. *See Harper*, ¶¶ 16-24. But the *Harper* division didn't grapple with the plain language of section 13-22-223(1)(e), which requires only that the party object to the arbitrator no later than the beginning of the arbitration hearing. Although a party remains free to seek a judicial stay of the arbitration under section 13-22-207(2) and to ask the court to resolve the objection, nothing in the statute requires that course of action to avoid waiver.

¶ 26 For the same reason, we also aren't convinced by the Goldstein defendants' reliance on other out-of-state cases that follow *Harper*'s lead. Most of their cited cases don't involve statutory language akin to section 13-22-223(1)(e), which we conclude is dispositive. Others, like *Adams v. Barr*, 2018 VT 12, ¶ 16, 182 A.3d 1173, 1179, depart from the statutory language in favor of following the state's prior case law on waiver. We decline to follow that path. Our job is to "give full effect" to the legislature's intent, not favor our own precedent that deviates from the statute. *Est. of Breeden*, 87 P.3d at 170; *accord Phillips v. Bd. of Comm'rs*, 242 P. 70, 71 (Colo. 1925) (when the reasoning of an appellate

decision would "abrogate an express provision of a statute, it is wrong, and cannot avail as a precedent").

¶ 27    We recognize, as the Goldstein defendants argue, that Wright participated "substantially" in the arbitration proceeding for several months before raising his objection on the proverbial eve of the arbitration hearing.  And the Goldstein defendants are correct that, under ordinary waiver principles, a party can implicitly waive an existing right or privilege by acting inconsistently with its assertion. *See Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984). But the General Assembly is free to modify ordinary waiver principles.  *See First Interstate Bank of Denv., N.A. v. Cent. Bank & Tr. Co. of Denv.*, 937 P.2d 855, 862 (Colo. App. 1996) (first citing *Lambdin v. Dist. Ct.*, 903 P.2d 1126 (Colo. 1995); and then citing *In re Marriage of Rahn*, 914 P.2d 463 (Colo. App. 1995)).  It did so in the CRUAA by setting an objection deadline in section 13-22-223(1)(e) that is relatively late in the arbitration process.  We aren't at liberty to change or ignore that deadline.  *See UMB*, ¶ 22; *see also* § 13-22-204(3)(a), C.R.S. 2025 (parties to an arbitration proceeding may not waive, or vary the effect of, the requirements of section 13-22-223, among other provisions); *Alexander v. Calton &*

*Assocs., Inc.*, 110 P.3d 509, 511 (N.M. Ct. App. 2005) (construing identical deadline in New Mexico's arbitration act and concluding that a finding of implicit waiver based on prior conduct "would be contrary to this provision").

¶ 28     While the General Assembly could have required a party who believes no agreement to arbitrate exists to raise their objection earlier in the arbitration proceeding or in a prehearing motion to the court, it struck the balance differently by requiring only a prehearing objection to the arbitrator.  We can't second-guess that legislative choice.  *See Rudnicki v. Bianco*, 2023 COA 103, ¶ 52, *aff'd*, 2025 CO 49; *Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1387 (Colo. 1997).

¶ 29     Accordingly, Wright didn't waive his objection to the alleged absence of an arbitration agreement, so we must reverse the district court's order denying Wright's motion to vacate the arbitration

award.[4]  We don't disturb the court's order as it pertains to the other Wright plaintiffs.

¶ 30    With all that said, the existence of a contract is a question of fact.  *Compton v. Lemon Ranches, Ltd.*, 972 P.2d 1078, 1080 (Colo. App. 1999).  Because the district court denied Wright's motion to vacate based on its determination that Wright had waived his objection, it didn't make findings resolving whether an agreement to arbitrate existed between Wright and each of the Goldstein defendants (Goldstein, Page 1 Solutions, and Altru-Media).  *See* § 13-22-223(1)(e).  Thus, we remand the case for the court to make findings on this question under section 13-22-223(1)(e) and to fully resolve Wright's motion to vacate without relying on waiver.

III.    Arbitral Jurisdiction Over Goldstein and Page 1 Solutions

¶ 31    The Wright plaintiffs contend that the arbitrator lacked jurisdiction over Goldstein and Page 1 Solutions because neither

---

[4] The Goldstein defendants argue in the alternative that Wright assumed the obligation to arbitrate.  But the district court and the arbitrator grounded their decisions in waiver only and didn't separately address whether Wright assumed the obligation to arbitrate.  Because we are a "court of review, not first look," *Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41, *aff'd*, 2021 CO 56, we decline to address this issue in the first instance.

16

signed the MOU containing the arbitration clause. We aren't persuaded.

## A. Additional Background

¶ 32 In their arbitration counterclaims, the Wright plaintiffs objected to the arbitrator's exercise of jurisdiction over Page 1 Solutions because it wasn't a party to the MOU's arbitration provision. They similarly argued in their prearbitration briefing that the arbitrator lacked jurisdiction over Goldstein in his individual capacity because he also wasn't a party to the arbitration clause.

¶ 33 In rejecting these arguments, the arbitrator determined that she had arbitral jurisdiction over Goldstein and Page 1 Solutions because both had consented to be bound by demanding arbitration. She also explained that the Wright plaintiffs had asserted claims against Goldstein and Page 1 Solutions in the arbitration.

¶ 34 The Wright plaintiffs reraised essentially the same argument before the district court in their motion to vacate the award, arguing that the arbitrator exceeded her authority by exercising jurisdiction over nonsignatories to the MOU. Like the arbitrator, the district court determined that Goldstein and Page 1 Solutions were proper

17

parties to arbitration because they had assumed the obligation to arbitrate.

## B. Standard of Review and Applicable Law

¶ 35    We review de novo whether an arbitrator exceeded their powers. *Herrera*, ¶ 15.

¶ 36    In general, only a party to an arbitration agreement can compel arbitration under that contract and only as to another signatory. *Santich v. VCG Holding Corp.*, 2019 CO 67, ¶ 6 (citing *N.A. Rugby Union LLC v. U.S. Rugby Football Union*, 2019 CO 56, ¶ 20). But limited exceptions to this rule allow a nonsignatory to compel a signatory to arbitrate. *Id.* One such exception occurs when the nonsignatory has assumed the obligation to arbitrate. *Id.* The fundamental question in determining whether a nonsignatory has assumed the obligation to arbitrate is whether they have manifested a clear intention to arbitrate the dispute. *See Herrera*, ¶ 21.

## C. Analysis

¶ 37    We start with the claims between Damages Inc., a signatory to the MOU, and the nonsignatories Goldstein and Page 1 Solutions. With respect to those claims, we agree with the district court that

Goldstein and Page 1 Solutions assumed the obligation to arbitrate. As the court explained, both Goldstein and Page 1 Solutions were active and voluntary participants in the arbitration. They listed themselves as claimants in the arbitration, and neither sought to resolve any claims outside of arbitration. On appeal, too, Goldstein and Page 1 Solutions maintain that they assumed the obligation to arbitrate through their conduct. Based on this conduct, we conclude that both Goldstein and Page 1 Solutions manifested a clear intent to arbitrate their disputes with Damages Inc.

¶ 38    We don't address this contention, however, as to the claims between Wright in his individual capacity and Goldstein or Page 1 Solutions. The district court hasn't yet made findings determining whether Wright was a party to the MOU's arbitration clause or otherwise subject to arbitration, so we can't tell whether Goldstein's and Page 1 Solutions' assumptions of the obligation to arbitrate extended to the claims involving Wright.

¶ 39    We also need not address this contention as to the claims between AJFA and Goldstein or Page 1 Solutions. The arbitrator noted that both sides attempted to assert claims in the arbitration on behalf of AJFA. In the end, the arbitrator treated only Wright

and Damages Inc. as respondents in the arbitration and didn't resolve any claims asserted by AJFA.

## IV.    Arbitrability

¶ 40    The Wright plaintiffs next contend that the district court erred by allowing the arbitrator to determine the arbitrability of all claims. We disagree.

### A.    Standard of Review and Applicable Law

¶ 41    We review de novo whether the parties have agreed to arbitrate the question of arbitrability. *Taubman Cherry Creek Shopping Ctr., LLC v. Neiman-Marcus Grp., Inc.*, 251 P.3d 1091, 1093 (Colo. App. 2010).

¶ 42    Under the CRUAA, the district court presumptively determines whether a particular controversy is subject to an arbitration agreement. § 13-22-206(2), C.R.S. 2025; *Taubman*, 251 P.3d at 1093-94. But arbitration, including the question of who decides arbitrability, is a matter of contract between the parties. *See Taubman*, 251 P.3d at 1094. Consequently, the parties may contract to have an arbitrator, not the court, determine threshold arbitrability questions provided that clear and unmistakable evidence shows that the parties intended that result. *See id.*;

*Galbraith v. Clark,* 122 P.3d 1061, 1063-64 (Colo. App. 2005) (citing *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 943-44 (1995)).

¶ 43 For example, when parties explicitly incorporate into their arbitration agreement rules that empower the arbitrator to determine issues of arbitrability, that incorporation constitutes clear and unmistakable evidence of the parties' intent to delegate those issues to the arbitrator. *See Johnson-Linzy v. Conifer Care Cmtys. A, LLC,* 2020 COA 88, ¶ 17; *Ahluwalia,* 226 P.3d at 1098-99.

### B. Analysis

¶ 44 The MOU's arbitration clause requires that disputes be "submitted to the American Arbitration Association ('AAA') for binding arbitration in accordance with the Commercial Arbitration Rules of the AAA." Rule R-7(a) of those rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA, Commercial Arbitration Rules and Mediation Procedures, R-7(a) (Sep. 1, 2022), https://perma.cc/S644-4E6P.

21

¶ 45    Because the MOU explicitly incorporated this AAA rule, those who agreed to the MOU delegated the question of arbitrability to the arbitrator. *See Johnson-Linzy*, ¶ 17; *Ahluwalia*, 226 P.3d at 1098-99.

¶ 46    We aren't convinced otherwise by the Wright plaintiffs' reliance on *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024).[5] In *Coinbase*, the Supreme Court held that when parties have signed two contracts that conflict over whether disputes should be sent to arbitration, the court must decide in the first instance which contract governs. *Id.* at 150. In the present case, though, the district court found no conflict between the operating agreement and the MOU. The court explained that both sides had (1) "accounted" for the operating agreement when creating the MOU; (2) intended to use each agreement "in parallel" with the other; and (3) agreed that neither agreement superseded the other. We agree with the court's interpretation harmonizing the two agreements. With no conflict between the two, *Coinbase* doesn't affect our analysis.

---

[5] While cases construing the Federal Arbitration Act may inform our interpretation of the CRUAA, *Digit. Landscape Inc. v. Media Kings LLC*, 2018 COA 142, ¶ 27, they don't bind us.

¶ 47     Accordingly, the district court didn't err by determining that the parties to the MOU had delegated arbitrability questions to the arbitrator.

## V.     Findings Involving Nonparties

¶ 48     The Wright plaintiffs also appear to contend that the arbitrator exceeded her authority under section 13-22-223(1)(d) by making findings about nonparties who testified at the arbitration hearing. But they don't cite any authority suggesting an arbitrator is foreclosed from making findings involving nonparty witnesses, nor are we aware of any. *See* C.A.R. 28(a)(7)(B) (appellant's opening brief must contain, among other things, "citations to the authorities . . . on which the appellant relies"). Because we don't consider undeveloped or unsupported arguments, we decline to address this contention. *Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12, *aff'd*, 2021 CO 56.

## VI.     Appellate Attorney Fees

¶ 49     Damages Inc. requests its appellate attorney fees under the MOU's prevailing party clause and section 13-22-225(3), C.R.S.

23

2025.⁶  The Goldstein defendants make a competing request.  Both sides' requests are contingent on prevailing on appeal.

¶ 50    The MOU's arbitration provision contains a prevailing party clause, stating that "[t]he prevailing party in any dispute shall be entitled to recover its costs, including reasonable attorneys' fees, together with prejudgment interest."

¶ 51    Damages Inc. hasn't prevailed on any of its appellate contentions, so we deny its request for appellate attorney fees.

¶ 52    But because we reverse in part and remand for further proceedings on Wright's motion to vacate the arbitration award, it remains to be seen whether any of the Goldstein defendants are prevailing parties under the MOU.  We therefore deny, as premature, the Goldstein defendants' request for appellate attorney fees.  *See Bedard v. Martin,* 100 P.3d 584, 593-94 (Colo. App. 2004).  After the district court resolves Wright's motion to vacate and any other necessary issues on remand, it may determine whether any of

---

⁶ The Wright plaintiffs made a general request for appellate attorney fees in their opening brief but clarified in their reply brief that the request is limited to Damages Inc., the MOU's signatory.

24

the Goldstein defendants are entitled to their appellate attorney fees as prevailing parties. *See id.*

## VII. Disposition

¶ 53 We reverse the portion of the district court's judgment denying Wright's motion to vacate the arbitration award. We remand the case for the district court to (1) make findings under section 13-22-223(1)(e) regarding whether an agreement to arbitrate existed between Wright in his individual capacity and the Goldstein defendants; (2) resolve Wright's motion to vacate without relying on waiver; (3) determine whether any of the Goldstein defendants are entitled to their reasonable appellate attorney fees; and (4) conduct any other proceedings necessary to fully resolve the parties' claims. In all other respects, we affirm the judgment.

JUDGE PAWAR and JUDGE MEIRINK concur.